218    344
p218    357
p218    358

## Graham's Estate (No. 1).

*Trusts and trustees—Mismanagement of trust estate—Liability of trustees —Misconduct of cotrustee.*

Where a testator appoints three trustees of his estate, and two of them permit their cotrustee to manage and control the estate, and die without any of the trust funds ever having been received by them, and it comes to light many years after their death that the third trustee had embezzled the trust money, in order to charge the estates of the earlier deceased trustees with the loss it must be made to appear that the devistavit occurred in their lifetime, and that their mismanagement and neglect contributed to the result.

Argued Jan. 15, 1907. Reargued April 1, 1907. Appeal, No. 268, Jan. T., 1906, by Frank D. Graham and John D. Ford, executors of the will of David Young, deceased, from decree of O. C. Phila. Co., April T., 1896, No. 239, dismissing exceptions to auditor's report in Estate of David Graham, deceased. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Reversed.

Exceptions to report of James C. Stillwell, Esq., auditor.

From the record it appeared that a petition for an account, which was filed by the administrator de bonis non cum testamento annexo of David Graham and by five of his grandchildren, set forth that David Graham died in September, 1871, leaving a last will, of which he appointed Theodore R. Graham, David Graham, Jr., and David Young executors, to whom letters testamentary were duly granted; that David Graham, Jr., died July 4, 1886, leaving a last will, of which he appointed his wife, Maria Elizabeth Graham, executrix; David Young died October 4, 1890, leaving a last will of which he appointed Theodore R. Graham, Frank D. Graham and John D. Ford executors; Theodore R. Graham was dismissed as executor of the will of David Graham on May 13, 1896; that the Commonwealth Title Insurance and Trust Company was appointed administrator de bonis non cum testamento annexo of David Graham on May 14, 1896; that the executors of the will of David Young had not filed an account of their admin-

istration of his estate although more than twenty-nine years
had elapsed since the grant of letters to them; that by the
terms of the will of David Graham his estate was to be held
by his executors and trustees for the life of his children, with
remainder to their issue, and, in case any child should die
without issue, his share was to be held for the remaining chil-
dren of testator and their issue; that by the terms of the will
of testator, the moneys of his estate were to be invested in
first mortgage on real estate and bonds of the United States
or State of Pennsylvania; that·of the seven children of David
Graham, only Frank D. Graham and Theodore R. Graham
survived, and of those who died only William R. Graham and
Edwin Graham had left children; that in May, 1896, when
Theodore R. Graham was dismissed from his office, petitioners
had learned that, as alleged, the executors of and trustees un-
der the will of David Graham had been guilty of gross mis-
management of said estate, and that David Graham, Jr., and
David Young had been supinely negligent of their duties, so
that it was in the power of Theodore R. Graham to embezzle
and defraud the said estate; that David Young was a borrower
from said estate, and permitted moneys of the estate to be
loaned to a firm of which he was a member; that proceedings
had been begun in 1896 in the orphans' court for an account-
ing, and that under proceedings in said court an account was
stated for Theodore R. Graham, the surviving and defaulting
executor of the will of David Graham, by an auditor appointed
by the court, showing that he was indebted to said estate in
the sum of $149,675.51, and that an order to pay had not been
complied with by the said Theodore R. Graham, and an at-
tachment thereunder was returned not served.    The petitioners
prayed for a citation on the executrix and executors of the
deceased executors to file accounts for their respective dece-
dents.

The answers of respondents set forth that the individual
petitioners, who were sui juris, and those who were minors by
their guardians, had an opportunity to obtain full information
in regard to the estate of David Graham at any time they so
desired; that the deceased executors had not been supinely
negligent of their duties or were guilty of any mismanagement
of said estate, or that by any culpable mismanagement they

put it in the power of Theodore R. Graham to embezzle and defraud; that the said David Young did not unlawfully borrow moneys from said estate, or permit the lending of moneys of the decedent's estate to the firm of which he was a member; that petitioners had not exercised due diligence in enforcing their claims against the said Theodore R. Graham, and that any statement of an account for Theodore R. Graham could not affect respondents or be a charge against them; that all the debts of the said David Graham had been ·fully paid and discharged more than thirty years before the filing of the said petition; that the assets of the estate of said David Graham were in the possession and control of the said Theodore R. Graham, a son of David Graham, and uncle of the individual petitioners, and were in such possession and control with the acquiescence and permission of the individual petitioners; that Theodore R. Graham was a man in active business, having the full respect and confidence of the business community at all times during the lifetime of respondents' decedents; that the said Theodore R. Graham had been dismissed from his office as executor on the application of petitioners without any notice to respondents; that more than thirty years had elapsed since the death of David Graham; that the debts of said David Graham had been paid more than thirty years ago, and that the estate had passed into the hands of said Theodore R. Graham as trustee without any demand upon his coexecutors for an accounting, and with the full knowledge and assent of the parties in interest.

The case was referred to James C. Stillwell, Esq., auditor, who reported in favor of the petitioners.

Exceptions to the auditor's report were dismissed in an opinion by ASHMAN, J., and the following decree was entered:

And now, July 17, 1906, the supplemental report of the auditor, to whom was recommitted the report of the auditor to state an account of David Young and David Graham, Jr., executors and trustees under the will of David Graham, deceased, and to make distribution of the amount found to be due by the said executors and trustees, having been duly filed with exceptions thereto; and the said exceptions having been dismissed on July 14, instant, and the said auditor's report confirmed, it is hereby ordered, adjudged and decreed that the said audi-

tor's reports and the awards therein made to the Commonwealth Title Insurance and Trust Company, administrator d. b. n. c. t. a. of the estate of David Graham, deceased, of the sum of $175,637.49 from the estate of David Graham, Jr., deceased, and the sum of $216,107.66 from the estate of David Young, deceased, be and are hereby approved and confirmed.

*Error assigned* was the decree of the court, quoting it.

*John G. Johnson*, with him *H. S. P. Nichols*, for appellants. —More than twenty-one years having elapsed since the account in this matter was demandable, the legal representatives of the deceased executors cannot be compelled to file an account: Norris's App., 71 Pa. 106; Henry's Est., 198 Pa. 382; Nixon's Est., 14 Phila. 297; Seibert's App., 2 W. N. C. 53; Hanbest's Est., 3 W. N. C. 520; Wilson's App., 115 Pa. 95; Neel v. Beach, 92 Pa. 221.

The testimony shows that the deceased executors never received any assets of their decedent's estate, and, not having received assets, they are not chargeable with them, nor liable to account for them: Brown's App., 1 Dallas, 311; Weldy's App., 102 Pa. 454; Hall v. Boyd, 6 Pa. 267; Stell's App., 10 Pa. 149; Irwin's App., 35 Pa. 294.

There is no proof that the deceased executors were guilty of negligence or mismanagement of the estate. They showed no undue confidence in their coexecutor, they trusted him no farther than the parties in interest did. The coexecutor was a respected citizen, and considered a man of integrity, trustworthy, and of financial responsibility. The deceased executors were certainly not chargeable with greater insight than other persons: Sterrett's App., 2 Penrose & Watts, 419; Jones's App., 8 W. & S. 143; McNair's App., 4 Rawle, 148; Fesmire's Est., 134 Pa. 67; Myer v. Myer, 42 W. N. C. 445; Neff's App., 57 Pa. 91; Semple's. Est.; 189 Pa. 385; Young's App., 99 Pa. 74; Beatty's Est., 214 Pa. 449.

It was the duty of those interested in the estate of David Graham to establish, within six years of the decease of each executor and trustee, a claim against his estate, for payment of money, because of negligent management of his trust during his lifetime.

A failure to establish a claim against the estate of the deceased executor during the period of six years, was a bar to any claim thereafter.

In no event should the court have ordered a payment by the executors of the deceased executor until an ascertainment, under a citation to file an account of their executorship of the estate of the decedent, that there were funds in hand which had not been theretofore distributed.

*Henry Budd,* with him *Robert H. McGrath,* for appellee. —Where a coexecutor dies, his estate becomes liable for everything he was liable for at the time of his death, and this liability for the maladministration of his coexecutor or of himself can only be determined after an account and evidence : Montgomery's Estate, 3 Brewster, 306 ; Hanbest's Estate, 3 W. N. C. 520.

The claim is not barred by lapse of time : Nixon's Est., 14 Phila. 297 ; Hoffman's Est., 2 Pearson, 491 ; Blackman's Est., 2 Kulp, 162 ; Brown's Est., 8 Phila. 197 ; Hall v. Cushing, 26 Mass. 395 ; Conkey v. Dickinson, 54 Mass. 51 ; Hansell v. Downing, 17 Pa. Superior Ct. 235 ; Dragoo v. Dragoo, 50 Mich. 573 (15 N. W. Repr. 910).

If a man appoint several executors, they are esteemed, in law, but as one person representing the testator, and, therefore, the acts done by any one of them, which relate either to the delivery, gift, sale, payment, possession or release of the testator's goods, are deemed the acts of all, for they have a joint and entire authority over the whole : Wood's Appeal, 92 Pa. 379 ; First Nat. Bank of Allegheny v. Farmers' Deposit Nat. Bank of Pittsburg, 5 Cent. Repr. 505 ; Lightcap's Appeal, 95 Pa. 455 ; 1 Perry on Trusts, sec. 263 ; Williams on Ex., 6th Am. Ed. 946 ; Schouler on Ex. & Admrs., sec. 400, etc.

Whenever either a trustee or an executor, by his own negligence or laches, suffers his cotrustee or coexecutor to receive or waste the trust funds or assets of the testator, when he has the means of preventing such receipt and waste by the exercise of reasonable care and diligence, then, and in such case, such trustee or executor will be held personally responsible for the loss occasioned by such receipt and waste of his cotrustee or coexecutor : Wilmerding v. McKesson, 103 N. Y. 329 (8

N. E. Repr. 665); Booth v. Booth, 1 Beav. 125; 2 Story's
Equity Jurisprudence, sec. 1,283; Hall v. Boyd, 6 Pa. 267;
Stell's App., 10 Pa. 149; Jones's App., 8 W. & S. 143; Ster-
rett's App., 2 P. & W. 419; Clark's App., 18 Pa. 175; Light-
cap's App., 95 Pa. 455; Weldy's App., 102 Pa. 454; Wei-
gand's App., 28 Pa. 471; DeHaven v. Williams, 80 Pa. 480;
Fesmire's Est., 134 Pa. 67.

OPINION BY MR. JUSTICE STEWART, May 20, 1907:

David Graham died in Philadelphia on September 21, 1871,
leaving a last will which was proved September 30, 1871.
Letters testamentary were granted to David Young, David
Graham, Jr., and Theodore R. Graham, the executors named
in the will. The testator was survived by his seven children.
The will, after directing the payment of his debts and a small
annuity, gave the residue of the estate, real and personal, to
the executors and trustees and the survivor of them, in trust
to collect the rents and interest therefrom and pay the net in-
come to his seven children in equal shares. Upon the decease
of any or all of testator's children, leaving lawful issue, the
will gave to such issue, upon their respectively arriving at law-
ful age, such share as they respectively would be entitled to
under the intestate laws. The estate given to the issue of a
deceased child was to be held in trust, and the income appro-
priated to the support and education of such issue during
minority. The executors and trustees were authorized to sell
and convey all or any part of the estate whenever in their
judgment it would be for the benefit of the estate, and directed
to invest the proceeds in first bonds and mortgages of the
United States, or State of Pennsylvania, or Philadelphia. On
October 30, 1871, the executors filed an inventory and ap-
praisement of the estate, consisting of household furniture,
mortgages, stocks, bonds and good loans, amounting in the
aggregate to $246,501.40. David Graham, Jr., one of the
executors, died July 4, 1886; David Young, another of the
executors, died October 4, 1890; Theodore R. Graham, the re-
maining executor, was dismissed from his office as executor on
May 13, 1896. None of the executors ever filed an account.
On May 14, 1896, letters of administration d. b. n. c. t. a. on
David Graham's estate were granted to the Commonwealth

Title Insurance and Trust Company. In August, 1896, and February, 1897, petitions were filed by the administrator and certain legatees for a citation on the executors of David Graham, Jr., and David Young, to file accounts for their respective decedents as executors of David Graham, deceased. The proceedings on these petitions were without result.

Theodore R. Graham, surviving executor, failed to. file an account, and on December 2, 1896, the court appointed an auditor to take proof and state an account for him as executor. On January 18, 1902, the report of the auditor was confirmed showing a balance due from the executor to the estate of $149,675.51.

On May 27, 1902, the administrator and certain legatees again presented a petition asking for a citation on the executors of David Graham, Jr., deceased, and of David Young, deceased, to file accounts of their decedents as executors of David Graham, deceased. From the grant of letters testamentary, September 30, 1871, to the time of the death of David Graham, Jr., and David Young, respectively, it was alleged in the petition that the executors and trustees had been guilty of the grossest mismanagement and direct violation of their duties, and " were supinely negligent of their duties in failing to inquire as to the assets or securities, the investments or reinvestments of the estate ; in putting it in the power of their coexecutor and trustee to embezzle and defraud, and in the culpable omission of every duty which the acceptance of the trust demanded." It was further averred in the petition, that the embezzlements from the estate began within three years of the assumption of the trust by the executors and trustees, and in 1890, at the death of David Young, had reached the amount of $140,000. Answers to the petition were filed by the executors of Graham and Young respectively, denying the allegations of mismanagement and embezzlement, admitting that Graham and Young had not filed accounts as executors of David Graham's estate, and alleging that the respondents were without information of the condition, conduct or management of the estate of David Graham, deceased, prior to the death of David Graham, Jr., and David Young. The answers averred that Young and Graham, as executors and trustees, never had any of the funds or assets or any of the accounts of the estate of

their testator in their possession or control, and that more than thirty-one years had elapsed since the granting of letters testamentary in the estate, and praying that the petition be dismissed. Testimony was taken, and the court after a hearing on the petition, answer and testimony, appointed an auditor to state an account for David Young and David Graham as executors and trustees of David Graham, deceased. The auditor's report was finally confirmed July 17, 1906. The auditor found due from the estate of David Graham, Jr., $175,637.49, and from the estate of David Young, $216,107.66, and both sums he awarded to the Commonwealth Title Insurance and Trust Company as administrator. The court entered a decree confirming the auditor's report, and from that decree the executors of David Graham, Jr., deceased, and of David Young, deceased, have appealed.

The appellants deny the authority of the court, under the circumstances, to compel the representatives of the deceased executors to file an account; they allege that the auditor erred in not stating the account of all three of the executors to July 4, 1886, the date of David Graham's death, and the account of the two surviving executors from that date to October 4, 1890, when Young died; that the auditor erred in charging each of the executors of David Graham, Jr., and of David Young with interest covering the same period; that the auditor erred in not requiring the interest payable to Theodore R. Graham, the defaulting executor and trustee, to be withheld from him or his assigns and applied to the payment of his indebtedness to the estate; and that the auditor erred in holding that there was any balance of principal unaccounted for by either David Graham, Jr., or David Young. The appellants further alleged that there is error in the order made by the court to pay the amounts found to be due from the deceased executor.

We have here two appeals, with the same facts presented in each. For purpose of discussion they may be considered together.

From the state of facts above made these conclusions result:

1. Upon the death of David Graham, Jr., in 1886, the entire control and management of the trust estate devolved upon the surviving trustees. The estate of David Graham, Jr., was

at law discharged from liability in connection with the trust, except at the suit of the surviving trustees. They, and they alone, had the right to compel an accounting by David Graham's legal representatives for such part of the trust estate as was in the hands of David Graham, Jr., at the time of his death; they were the only parties entitled to receive, and, therefore, the only parties to make demand. Not only does the presumption obtain that David Graham, Jr., at the time of his death owed nothing to the trust fund, from the fact that the surviving trustees upon whom the law then cast the liability never made any claim or demand upon his estate, but it is an admitted fact in the case that he owed nothing, no part of the trust funds having been received by him.

2. Upon the death of David Young in 1890, the entire control and management of the trust estate devolved upon Theodore R. Graham, the sole surviving trustee. David Young's estate was then at law discharged from liability in connection with the trust, except at the suit of the surviving trustee. As in the case of David Graham, Jr., not only does the presumption that David Young owed nothing to the trust estate obtain, from the fact that the surviving trustee, upon whom the law then cast the entire liability, never made any claim or demand upon his estate, but here again it is admitted that no portion of the trust estate passed into his hands.

3. Presumably the entire estate after the death of David Young was intact in the hands of Theodore R. Graham, and so continued until his discharge in 1896. Certainly this was the measure of his liability. "Upon the death of one of the original trustees the whole estate, whether real or personal, devolves upon the survivors, and so on until the last survivor; and upon the death of the last survivor, if he has made no disposition of the estate by will or otherwise, it devolves upon his heirs, if real estate, and upon his executors or administrators if it is personal estate. The title in the surviving trustee is complete, and no breach of trust after the death of his cotrustees can be charged upon their estate, nor can the representatives of his cotrustee interfere with his management of the trust estate, even if he is insolvent or unfit for the trust:" Perry on Trusts, sec. 343.

4. While the death of David Graham, Jr., and David Young

operated at law to discharge from liability their respective estates, a liability in equity at once attached, available to the parties directly in interest : Hengst's Appeal, 24 Pa. 413 ; Young's Appeal, 99 Pa. 74 ; Fesmire's Estate, 134 Pa. 67.   The fact that neither had ever received any money of the estate, would be a sufficient answer to any demand upon their personal representatives by the surviving trustees ; but such fact would not exempt their estate from liability to the parties in interest, if it was through neglect of duty on their part that no funds came into their hands, and loss had befallen the estate in consequence.   The effort here is to fasten an equitable liability on the estates of David Graham, Jr., and David Young for a devastavit committed by Theodore Graham.   If such devistavit would not have occurred except for neglect of duty on the part of the cotrustees, the estate of the latter ought in equity to make good the loss whatever it be.   Any inquiry must begin with the fact of a devastavit committed by Theodore Graham, and by him alone of all the trustees ; but the very first thing to be determined is when the devistavit occurred.   It is not a question of joint liability for trust funds, or whether all, so long as they were alive, participated in the management of the trust.   Joint liability may be admitted up to the death of Graham and Young, but both died owing the trust nothing, and they were not sureties for the surviving trustee.   What was the condition of the trust estate when Young died ?   Was it intact in the hands of the surviving trustee ?   If so, of what use can it be to inquire whether the other trustees were negligent in permitting Theodore R. Graham to have exclusive control of the funds ?   The law takes no account of neglect except as loss results.   What difference can it make that no account had been filed ?   It was, of course, gross neglect of duty not to file an account ; but if, notwithstanding, the fund was intact when Young died, his default in this regard came to nothing.   Until it be made to appear that the diversion and waste of the fund occurred prior to the death of Young, inquiry as to the methods observed by the trustees in the management of the funds can avail nothing.   Were it ascertained as a fact that before the death of Young funds belonging to the estate had been misapplied by Theodore Graham, two inquiries would then follow ; first, what was the

amount misapplied or diverted and lost, and second, how much of this misappropriation ought Young's estate, from equitable considerations, make good? The distinction between the legal and equitable liability is here to be closely observed. For the misapplication of funds by one of three trustees, the other two are not liable until it be first shown that it has occurred through some default of theirs. Each trustee has an equal right with the others with respect to the custody of the funds, so that, with the fact determined that a devastavit by Theodore R. Graham in the lifetime of Young occurred, and the amount of loss, the question would still remain, for how much of it ought Young's estate in good conscience and equity be held liable? It may have come about through different transactions at different times, some of which Young, by proper care and vigilance, could have prevented, while with respect to others he would have been powerless to interfere. A specific finding of facts would be required to determine the amount of liability.

5. Now, applying these general principles, we have here an account stated by an auditor charging the estate of David Graham, deceased, with $175,637.49, the entire value of the trust estate at the time of his death; and an account charging the estate of David Young with $216,107.66, the entire value of the estate at the time of his death. Since it is an established fact that not a dollar of the trust passed into the estates of either Graham or Young, these charges to have any warrant at all must rest upon some equitable considerations sufficient to move the conscience of a chancellor. Did the insolvency of Theodore R. Graham occur during the lifetime of either David Graham, Jr., or David Young? Not only is there no such finding, but, so far as we can see, there is no evidence upon which an affirmative finding of such fact could rest. Even were it otherwise, without more, it would not warrant a charge against Graham and Young for the entire estate. What was their negligence in the matter that occasioned or contributed to the loss? The question is not what was their neglect of duty generally, but how did their failure to do anything that duty required of them produce the result to the estate? Did either know or have reason to know that his co-trustee, who was as much entitled to the custody of the funds as himself, was insolvent or likely to become so? When did

either of them ascertain it, or when in the exercise of prudence should he have ascertained it? Their responsibility and accountability would begin only when their prudence failed; for what occurred before, they were not liable. We have searched through the findings of the auditor, and indeed through the whole record for that matter, without finding any light on these most material questions. The only finding by the auditor that has any bearing on the question is his 26th, which, so far as it goes, is distinctly adverse to the contention of the appellees. The auditor finds that: "during the entire period of his connection with the said firm" (which continued for years after the death of David Young), "Theodore R. Graham had the confidence of his employers and copartners and no one, so far as the evidence discloses, questioned his honesty or financial responsibility in any way." If we look into the evidence we find nothing there on the subject, except the testimony of Mr. Field, the business partner of both Theodore R. Graham and David Young, and the only inference to be derived from his testimony is, that Theodore R. Graham's insolvency did not occur until long after David Young's death. He testified, among other things, that up until this later period his integrity had never been questioned. The effort before the auditor was to show a joint liability resulting from the participation of all in the business of the trust; and from an affirmative finding here, it seems to have been assumed that liability of the estates of the deceased trustees resulted as matter of law. But as we have said, this is aside from the issue; joint liability up to the period of death is a conceded fact; but after that joint liability ceased; and if Graham and Young's estates are to be held, it must be solely because of misconduct or neglect. It may be that this entire loss has resulted from their failure to do their duties as trustees, but there is no evidence of such fact and the law will not presume it.

The contention of the appellees is, that Theodore R. Graham began to misapply the funds immediately upon his appointment, and that he continued so doing until the sum total of the misappropriation at the time of the death. of Young amounted to $87,725. The assertion has nothing to support it, except the fact that during all this period Theodore R. Graham, as trustee, had been from time to time, with the as-

sent and co-operation of his cotrustees, converting certain securities and receiving into his hands the money therefor, until the total so received amounted to the sum stated.  There is no evidence whatever that he misapplied or wasted a dollar of it before Young's death.  Suppose it was negligence in his cotrustees to permit this accumulation of money in his hands, how could such negligence have occasioned the loss if his devastavit occurred at a latter period, when by operation of law, and not by consent of his cotrustees, he was invested with control of the entire estate?  As trustee he had a right to receive this money with the assent of his cotrustees, and its mere receipt with their acquiescence gives rise to no inference of any dolus malus on their part, or malfeasance on his.

In view of our conclusions the other questions so elaborately argued as to the effect of the lapse of time upon the right to demand an accounting, and the power of the court to decree a payment of the balance found due on the accounts directly to the successor in the trust, need not be considered.  We rest our determination in the case wholly upon the ground that the record discloses nothing which in equity and good conscience requires an accounting by either estate here involved.  Whether upon the showing made before the lower court, there was sufficient to call for the appointment of an auditor to state these accounts, we need not decide.  It is enough to know that from the facts found by the auditor no liability to account results.  The effect of our ruling will be to terminate the proceeding.

The exceptions, so far as they question the sufficiency of the findings of the auditor for the accounts stated by him against these several estates, and the decree of the court confirming the same are sustained.  The decree is reversed.